United States District Court
Southern District of Texas
**ENTERED**
September 12, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| JESSE MANUEL SANDOVAL, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 6:24-CV-00024 |
| | § | |
| BOBBY LUMPKIN, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Jesse Manuel Sandoval, Jr. is a Texas inmate appearing *pro se* and *in forma pauperis* in this prisoner civil rights action. (D.E. 1). Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A. For purposes of screening, Plaintiff has stated the following claims against **Director Bobby Lumpkin, the Director of the Texas Department of Criminal Justice (TDCJ)**, in his official capacity for injunctive relief: (1) a First Amendment claim under § 1983; and (2) a claim under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq*. Accordingly, it is respectfully recommended that these claims be **RETAINED**. The undersigned will order service on Defendant Lumpkin.

The undersigned further **RECOMMENDS** that Plaintiff's § 1983 claims against Director Lumpkin in his official capacity for monetary damages be **DISMISSED without prejudice** as barred by the Eleventh Amendment.

**I.     JURISDICTION**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

**II.    PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS[1]**

Plaintiffs' claims and allegations in this action arise in connection with his current assignment to the Stevenson Unit in Cuero, Texas. Plaintiff practices Native American religious customs, beliefs, and traditions. Through the ancestry of both his biological parents, Plaintiff is a descendent of the Lipan Apache Tribe. Plaintiff has practiced his Native American Religious beliefs for years and his religion preference is referenced in Plaintiff's TDCJ records. Plaintiff's religious beliefs require him to grow his hair long and in two braids as an expression of his Native American faith. TDCJ officials have denied Plaintiff's requests to wear his hair in two long braids in accordance with the TDCJ grooming policy. Plaintiff has been ordered to comply with the TDCJ's grooming standard and he is subject to being disciplined if he refuses to comply. Plaintiff alleges he is a good inmate who follows the rules and that it has been over two years since he has had even a minor TDCJ disciplinary infraction.

Plaintiff has sought an exception to policy through the TDCJ Religious Practices

---

[1] Plaintiff testified at an evidentiary hearing before the undersigned on September 11, 2024. *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). The evidentiary hearing is "in the nature of a motion for more definite statement." *Id.* Plaintiff's allegation are summarized from both his written complaint and his *Spears* hearing testimony.

Committee and by filing formal TDCJ grievances. Plaintiff has been denied the right to grow his hair long by TDCJ officials since at least May 2022, which is now over two years. Various officials have told Plaintiff that if he wants to wear his hair in two long braids, he has to file a lawsuit. Plaintiff filed this action on August 5, 2024, naming TDCJ Director Bobby Lumpkin in his official capacity. Plaintiff alleges TDCJ policies and practices conflict with his right to practice his Native American faith in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.*, and the First Amendment. Plaintiff seeks injunctive and monetary relief.

## III.  LEGAL STANDARD

When a prisoner seeks to proceed *in forma pauperis,* the Court shall evaluate the complaint and dismiss it without service of process, if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to

present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir.1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." Id. (citations omitted).

## IV.  DISCUSSION

### A.  RLUIPA and First Amendment Claims

The First Amendment to the United States Constitution provides that Congress shall make no law respecting the establishment of religion or prohibiting the free exercise thereof.  U.S. Const., amend. I.  The United States Supreme Court has held prisoners retain their First Amendment rights, including the right to free exercise of religion.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  An inmate retains only those First Amendment rights which "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Thus, a prisoner's right to practice his religion may be limited where the prison officials establish there is a legitimate penological objective.  *Id.*; *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972) (per curiam); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995).

"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *O'Lone*, 482 U.S. at 349 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

In *Turner v. Safley*, the Supreme Court set forth four factors a court should consider in determining whether a reasonable relationship exists between a regulation and the governmental interest: (1) whether the regulation has a logical connection to the legitimate government interests invoked to justify it; (2) whether there are alternative means of exercising the rights that remain open to the inmates; (3) the impact that accommodation of the asserted constitutional right will have on other inmates, guards and prison resources; and (4) the presence or absence of ready alternatives that fully accommodate the prisoner's rights at *de minimus* cost to valid penological interests. *Turner*, 482 U.S. at 89-90; *see also Chriceol v. Phillips*, 169 F.3d 313, 316 (5th Cir. 1999).

RLUPIA "poses a far greater challenge than does *Turner* to prison regulations that impinge on inmates' free exercise of religion." *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 858 n.1 (5th Cir. 2004). Congress has also mandated that courts construe the RLUPIA "in favor of a broad protection of religious exercise," to the maximum extent permitted by law. 42 U.S.C. § 2000cc. RLUIPA § 3 addresses restrictions on the religious exercise of institutionalized persons. 42 U.S.C. § 2000cc-1, § 3. This section provides that "[n]o government shall impose a substantial burden on the religious exercise" of an institutionalized person unless the government demonstrates that the burden "is in furtherance of a compelling government interest" and "is the least restrictive means of

furthering" that interest. RLUPIA does not provide a cause of action for individual capacity claims. *Jones v. Alfred*, 353 F. App'x 949, 951 (5th Cir. 2009).

The Supreme Court held an Arkansas policy preventing a Muslim prisoner from growing a half-inch beard in accordance with his religious beliefs violated RLUIPA. *Holt v. Hobbs*, 135 S. Ct. 853 (2105). Relying on *Holt*, the Fifth Circuit Court of Appeals remanded a RLUIPA claim brought by a Native American inmate with regard to the TDCJ's kouplock-grooming policy. *Davis v. Davis*, 826 F.3d 258, 267-72 (5th Cir. 2016).

Plaintiff alleges he is a Lipan Apache and he practices his Native American faith. Part of his religious practice is wearing his hair long in two braids. Wearing two braids is significant and important to his faith because wearing two braids is how Plaintiff connects to his spiritual world and is part of the way he worships. While TDCJ policy allows Plaintiff to wear his hair in a single long braid, a single braid is inadequate because Plaintiff's faith requires him to have two braids to connect to his spiritual world. Plaintiff has tried to comply with TDCJ policy to obtain an exception to policy, but his requests have either been denied or delayed for over two years. Plaintiff has sufficiently alleged the applicable TDCJ grooming policy and the application of the policy to him places a substantial burden on his ability to practice his religion. Whether TDCJ officials have a sufficient penological interest to justify the one braid grooming policy is yet to be determined and will likely be the subject of this litigation. Nevertheless, for purpose of screening, the undersigned recommends Plaintiff has stated a nonfrivolous, plausible claim

under RLUIPA and the First Amendment through section 1983 for injunctive relief against Director Lumpkin in his official capacity.

### B. Eleventh Amendment Immunity and Official Capacity Claim.

Plaintiff has also named Director Lumpkin in his official capacity. A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

Therefore, Plaintiff's claims against Director Lumpkin in his official capacity for monetary damages are barred by the Eleventh Amendment. Thus, it is respectfully recommended that Plaintiff's claims for money damages against Director Lumpkin in his official capacity be dismissed as barred by the Eleventh Amendment.

### V. RECOMMENDATION

For purposes of § 1915A, the undersigned recommends Plaintiff has stated

sufficient facts that, if true, state First Amendment and RLUIPA claims against TDCJ Director Bobby Lumpkin in his official capacity for injunctive relief only. Accordingly, it is respectfully recommended that these claims be retained. It is further recommended that Plaintiff's claims against Director Lumpkin in his official capacity for monetary damages be **DISMISSED without prejudice**.[2]

Respectfully submitted on September 12, 2024.

Jason B. Libby
United States Magistrate Judge

---

[2]Claims implicating the Eleventh Amendment are subject to dismissal without prejudice because the Eleventh Amendment deprives the Court of subject matter jurisdiction. *See Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 450 (5th Cir. 2022) (observing that "the Eleventh Amendment generally deprives federal courts of jurisdiction" over certain suits); *United States v. Texas Tech Univ.*, 171 F.3d 279, 285 n.9 (5th Cir. 1999) ("While the Supreme Court has left this question open, [the Fifth Circuit] has repeatedly referred to the Eleventh Amendment's restriction in terms of subject matter jurisdiction.")

## **NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).